IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IAN LOCKHART, #R18787, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:25-cv-01033-RJD |
| | ) |
| DEANNA BROOKHART, | ) |
| JEREMIAH BROWN, and | ) |
| CHRISTOPHER EASTON, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff Ian Lockhart brings this action *pro se* pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, *et seq.*, for the alleged interference with his religious exercise at Lawrence Correctional Center.[1] He seeks monetary and injunctive relief. The Complaint (Doc. 2) is subject to review under 28 U.S.C. § 1915A,[2] which requires the Court to screen prisoner complaints and filter out portions that are legally frivolous or malicious, fail to state a claim for relief, or request money damages from an immune defendant. At this stage, the allegations are construed liberally in favor of the *pro se* plaintiff. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### The Complaint

Plaintiff makes the following allegations (Doc. 2, pp. 6, 19-22): Plaintiff claims that Defendants interfered with his religious exercise in violation of his rights under the First

---

[1] This case was severed from *Lockhart v. Brookhart*, No. 25-cv-00324-MAB (S.D. Ill.).
[2] The Court has jurisdiction to screen the Complaint, in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge and the limited consent by the Illinois Department of Corrections to the exercise of Magistrate Judge jurisdiction as set forth in the Memorandum of Understanding between this Court and the Illinois Department of Corrections.

Amendment Free Exercise and Establishment Clauses, Fourteenth Amendment Equal Protection Clause, and Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq*. *Id*. at 6.

Plaintiff is a documented Hebrew Israelite, who submitted a purchase order for a Star of David medallion and chain to signify his faith as a Hebrew Israelite on July 27, 2022. *Id*. at 19. The jewelry complied with Lawrence Correctional Center's rules and administrative directives. When the order arrived on August 17, 2022, it was forwarded to the prison's chaplain and personal property officer[3] for clearance. Plaintiff received verbal and written notification that his access to the jewelry was denied for safety and security reasons on September 12, 2022. He filed a grievance about the matter on September 22, 2022. *Id*.

During a warden's tour on October 28, 2022, Plaintiff spoke with Assistant Warden Jeremiah Brown about Chaplain Easton's decision to deny him access to the necklace and religious medallion. Plaintiff pointed out that the exact same medallion was frequently worn by inmates of Jewish faith, and Brown acknowledged that he approved its use by other inmates. *Id*. at 20. Brown denied Plaintiff's access to the same medallion, after reasoning that it could be used as a weapon. When Plaintiff observed that the star was surrounded by a circle of metal, Brown stated that the circle could be filed down to expose the star's pointed edges. Brown agreed that Plaintiff could have the medallion, but only if it was "etched into a flat surface" in a way that could not be filed down to expose its sharp points. *Id*.

During a warden's tour on January 6, 2023, Plaintiff spoke with Warden Brookhart about Brown and Easton's denial of the necklace and medallion. Plaintiff summarized his prior conversation with Brown. He added that Jewish inmates regularly wore the same medallion, and

---

[3] Plaintiff does not name the personal property officer as a defendant or assert any claims against this person.

he complained of discrimination. Warden Brookhart remarked that Plaintiff "wasn't Jewish" and must follow the prison's rules by ordering "a different kind" of Star of David. *Id*.

On May 19, 2023, Plaintiff submitted a written request for approval of a religious garment, known as "fringes," to the chaplain's office. *Id*. at 20. He submitted a second request to the counselor's office and chaplain's office on June 7, 2023. A month later, Counselor Garrett[4] forwarded Plaintiff documentation of his efforts to obtain approval of the garment from the chaplain. In the emails, Chaplain Easton explained that the garment was generally approved upon request, but the warden would decide after seeing the garment. *Id*.

Plaintiff ordered blue-colored fringes on July 11, 2023. When they arrived August 2, 2023, the blue fringes were forwarded to the personal property officer and chaplain for clearance. *Id*. at 21. On August 10, 2023, Chaplain Easton visited Plaintiff and explained that the fringes were denied as a possible security threat group ("STG") risk due to the blue color. *Id*. Plaintiff explained that blue fringes were allowed at every maximum-security prison where he was previously housed. Moreover, wearing blue-colored fringes daily was the "mandatory law of GOD." *Id*. (emphasis in original). When Chaplain Easton requested proof, Plaintiff referred him to Numbers 15: 38-40. Chaplain Easton said, "[I]t's a security issue now." *Id*.

On August 11, 2023, Plaintiff received written notice that his blue fringes were not allowed due to the possible STG issue identified by Chaplain Easton and Lawrence's Intelligence Unit. When Plaintiff spoke with Brown and Easton about this decision on August 18, 2023, Brown remarked that Plaintiff's religion does not mandate blue fringes and told him to order the all-white fringes available for inmates of Jewish faith. Plaintiff filed a grievance to complain about the denial of blue fringes on August 28, 2023. The grievance was still pending when he filed this lawsuit. *Id*.

---

[4] Plaintiff does not name Counselor Garrett as a defendant or assert any claims against this individual.

3

This severed case addresses the following claims in the *pro se* Complaint:

Count 4: First Amendment claim against Deanna Brookhart, Jeremiah Brown, and Christopher Easton for burdening Lockhart's practice of his religion by denying him access to a Star of David and/or blue fringes.

Count 5: Fourteenth Amendment equal protection claim against Deanna Brookhart, Jeremiah Brown, and Christopher Easton for denying Lockhart access to a Star of David and/or blue fringes that were available to other inmates.

Count 6: RLUIPA claim against Deanna Brookhart, Jeremiah Brown, and Christopher Easton for denying Lockhart access to a Star of David and blue fringes essential to the practice of his religion.

(Docs. 1 and 2). Any other claim mentioned in the Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (action fails to state a claim for relief if it does not plead "enough facts to state a claim to relief that is plausible on its face").

## DISCUSSION

The First Amendment Free Exercise Clause guards against substantial burdens on a central religious practice unless the government action is reasonably related to a legitimate penological interest. *Society of Divine Word v. U.S. Citizenship & Immigration Servs.*, 129 F.4th 437, 451-52 (7th Cir. 2025); *Kaufman v. McCaughtry*, 419 F.3d 678, 682-83 (7th Cir. 2005); *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013)). The First Amendment Establishment Clause may be violated without a substantial burden on religious practice if the government favors one religion over another without a legitimate secular reason. *Society of Divine Word*, 129 F.4th at 452; *Kaufman*, 733 F.3d at 696. RLUIPA[5] offers broader protections than the First Amendment by prohibiting substantial burdens on "any exercise of religion, whether or not compelled by, or central to, a system of religious belief" unless that burden is the least restrictive means of serving a compelling

---

[5] RLUIPA applies to state and local governments and those acting under color of state law, 42 U.S.C. § 2000cc-5(4).

4

government interest. *Grayson v. Shuler*, 666 F.3d 450, 451 (7th Cir. 2012); 42 U.S.C. § 2000cc-5(7)(A). Plaintiff alleges that Defendants placed a substantial burden on his religion for no legitimate penological reason, by denying him access to the medallion and fringes necessary to practice his faith as a Hebrew Israelite when other inmates of Jewish faith were allowed the same or similar items at Lawrence Correctional Center. The First Amendment claim (Count 4) and RLUIPA claim (Count 6) will proceed against all three defendants.

To proceed with the claim of discrimination under the Fourteenth Amendment's Equal Protection Clause (Count 5), a plaintiff must show that he "is a member of a protected class," that he "is otherwise similarly situated to members of the unprotected class," and that he "was treated differently from members of the unprotected class." *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (quoting *McNabola v. Chicago Transit Auth.*, 10 F.3d 501 (7th Cir. 1993) (citing *McMillian v. Svetanoff*, 878 F.2d 186, 189 (7th Cir. 1989)). The Equal Protection Clause may also "give[ ] rise to a cause of action on behalf of a 'class of one' where the plaintiff d[oes] not allege membership in a class or group" if the plaintiff can show "that [ ]he has been intentionally treated differently from others similarly situated and that there is no rational basis for different treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). In other words, the Equal Protection Clause "protects individuals against purely arbitrary government classifications, even when a classification consists of singling out just one person for different treatment for arbitrary and irrational purposes." Plaintiff alleges that he was singled out for different treatment as a Hebrew Israelite, when he was denied access to the same Star of David and fringes allowed to other inmates of Jewish faith. Whether characterized as a religious-based equal protection claim or class-of-one claim, Count 5 survives screening against the defendants.

#### INJUNCTIVE RELIEF

Plaintiff seeks a Court Order requiring Lawrence officials to approve his use of a Star of David medallion and blue fringes for religious purposes. Plaintiff does not request a preliminary injunction or temporary restraining order in connection with these religious items, and he does not invoke Rule 65 of the Federal Rules of Civil Procedure governing both forms of relief. The Court construes the request as one for permanent injunctive relief *at the close of the case*. The Court notes, however, that Plaintiff transferred to a different prison after filing this action, rendering any request for injunctive relief at it pertains to Lawrence Correctional Center **MOOT**.[6] *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995) (when prisoner who seeks injunctive relief for a condition specific to a prison is transferred out of that prison, the need for relief becomes moot).

#### DISPOSITION

The Complaint (Doc. 2) survives screening under 28 U.S.C. § 1915A. **COUNTS 1, 2,** and **3** will proceed against **ALL DEFENDANTS**. Plaintiff's Motion for Status (Doc. 13) and request for injunctive relief are **DISMISSED** as **MOOT**.

The Clerk shall prepare for **DEANNA BROOKHART, JEREMIAH BROWN,** and **CHRISTOPHER EASTON**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Memorandum and Order Severing Case (Doc. 1), the Complaint (Doc. 2), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full

---

[6] If he returns to the prison and faces the same conditions during the pending action, Plaintiff may renew his request for injunctive relief.

costs of service, as authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants, or if an appearance has been entered by counsel, upon that attorney, a copy of every pleading or other document submitted for consideration by this Court. Plaintiff shall include with the original paper to be filed a certificate stating the date that a true and correct copy of the document was mailed to each defendant or counsel. Any paper received by a district judge or a magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants should only respond to the issues stated herein**.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that any recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall

pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  November 12, 2025**

*s/ Reona J. Daly*
**REONA J. DALY**
**United States Magistrate Judge**

### Notice

The Court will take the necessary steps to notify the appropriate Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least 60 days from the date of this Order to receive Defendants' Answers, but it is entirely possible that it will take 90 days or more. When all Defendants answer, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, in order to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the Court.